IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:13CV62 |
| ) | |
| $2,990.00 in U.S. CURRENCY ) | |
| ) | |
| and ) | |
| ) | |
| $47,000.00 in U.S. CURRENCY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

The United States of America ("Plaintiff" or the "Government") has brought a civil forfeiture proceeding against $2,990.00 and $47,000.00 in U.S. currency (collectively, the "Defendant Properties"). Claimant Lucy Bell Dial ("Claimant") has filed a Verified Claim to the Defendant Properties. (Doc. 8.) Presently before the court is the Government's Motion for Summary Judgment. (Doc. 37.) Claimant has responded in opposition (Doc. 44) and the Government has filed a reply (Doc. 45). For the reasons that follow, the motion will be granted.

I. **FACTS**

The following facts are presented in the light most favorable to Claimant:

Between March 31, 2012, and the traffic stop precipitating the present action, Claimant's son, Lee Dial, had been under periodic surveillance by narcotics officers for suspected drug activity. (See Pl.'s Mem. in Supp. of Mot. for Summ. J., Ex. A, Declaration of John Pierce ("Pierce Decl.") (Doc. 38-2) ¶ 3.) On June 30, 2012, while conducting a license checkpoint, officers stopped Lee Dial for driving without a license. (Id. ¶ 4.) The officers then had a police canine perform a "narcotics sniff" on the vehicle. (Ex. D, Declaration of William Patterson, Jr. ("Patterson Decl.") (Doc. 38-5) ¶ 4.) The canine alerted to marijuana residue as well as to a "small compartment behind the driver's seat" where the officer found a large amount of cash. (Id. ¶ 5.) Ultimately, the traffic stop and search yielded $2,990.00 in U.S. currency. (Ex. G, Declaration of Stephen Razik ("Razik Decl.") (Doc. 38-8) ¶ 8.) The money was "folded in half and secured with a rubber band." (Id.) The car search also revealed marijuana seeds and two cell phones. (Ex. A, Pierce Decl. (Doc. 38-2) ¶ 6.) Based on the information from the investigation and the traffic stop,

officers applied for and received a warrant to search Lee Dial's residence. (Id. ¶ 8.) Lee Dial lived at home with Claimant, his mother. During the search of Claimant's residence, the police found marijuana seeds in the home as well as marijuana plants near the woodline of the property. (Ex. B, Declaration of David Hayworth ("Hayworth Decl.") (Doc. 38-3) ¶¶ 7, 9.)

During the search of Claimant's residence, Claimant asked to speak to one of the officers. Claimant claimed she had money in the house belonging to her; however, she could not verify the amount or location of the money. (Ex. A, Pierce Decl. (Doc. 38-2) ¶ 9.) Officers discovered $47,000.00, consisting entirely of $100 dollar bills, inside a "red Christmas-themed bag" in Claimant's closet. (Id. ¶ 10.) Within the Christmas-themed bag, one bundle of the money was packaged with rubber bands; the remainder was found in different bank envelopes. (Id.) After discovering the cash, the officers again spoke again with Claimant, who claimed she had over $100,000.00 in the house, mostly in $100 dollar bills. Claimant was unable to detail where she kept the money, asserting that she often moved the money around the house. Claimant further stated that the money came from her work as a Certified Nurse Assistant as well

as from Social Security checks sent to her and her daughter. (Id. ¶ 11.)

After returning to the Hoke County Sheriff's Office, the officers placed the seized currency in two boxes, leaving a third box empty. (Ex. D, Patterson Decl. (Doc. 38-5) ¶ 6.) The police canine then performed a narcotics sniff and alerted to the two boxes containing the currency from the car and home. (Id.)

Upon searching the contents of the seized cell phones, officers discovered multiple text messages referencing slang drug terms, as well as a picture of Lee Dial holding three bundles of currency. (Ex. A, Pierce Decl. (Doc. 38-2) ¶ 7; see Doc. 38-7.) Lee Dial was charged with violations of N.C. Gen. Stat § 90-95(a)(1) (manufacturing, selling, or delivering controlled substances) and N.C. Gen. Stat. § 90-108(a)(7) (maintaining or keeping a dwelling house for the keeping or selling of controlled substances). (Ex. A, Pierce Decl. (Doc. 38-2 ¶ 12.)

## II. **PROCEDURAL HISTORY**

On March 14, 2013, Claimant, through her attorney, filed a claim to the Defendant Properties. (Verified Claim (Doc. 8).) In her claim, Claimant argued that the Defendant Properties were not

procured from any illegal source and that Claimant had been saving the cash over a number of years. (Id. at 1.)

In early May of 2013, the Government served Claimant, through her attorney, with a set of interrogatories and requests for production of documents. (Pl.'s Mem. in Supp. of Mot. to Strike ("Pl.'s Mem.") (Doc. 24) at 1-2.) Claimant failed to respond to the discovery requests by the June 12, 2013 deadline. (Id. at 2.) On June 19, 2013, the Government sent a letter to Claimant's attorney requesting responses to the discovery requests. (Id.) On July 15, 2013, the Government sent a second letter to Claimant's attorney inquiring about the unanswered discovery requests. (Id.)

After Claimant failed to respond to the discovery requests and the two letters, the Government filed a Motion to Compel Response to Discovery. (Doc. 13.) The Magistrate Judge granted the motion to compel, ordering the discovery requests be answered on or before September 17, 2013. (Doc. 15.) The order explicitly warned that a failure to abide by its terms "may result in sanctions as provided in Fed. R. Civ. P. 37(b)(2), and may include among other things, dismissal of Claimant's claim." (Id.) The Government received responses to the interrogatories by the September 17 deadline; however, the

requests for production of documents remained outstanding. (Pl.'s Mem. (Doc. 24) at 2-3.)

On September 23, 2013, the Government sent a letter to Claimant's attorney inquiring about the status of the document production. (Id.; Ex. B (Doc. 24-2) at 1.) Two days later, Claimant's attorney responded, requesting a 20-day extension to respond to requests for production of documents. (Id.; Ex. C (Doc. 24-3) at 1.) On October 30, more than five months after the initial request, Claimant's attorney emailed the Government to advise it that Claimant was still in the process of gathering the requested documents. (Id. at 2-3; Ex. D (Doc. 24-4) at 1.)

This court held a hearing on April 4, 2014, where it determined Claimant's failure to respond to the court order constituted bad faith. This court then considered various sanctions, including striking Claimant's claim in its entirety. In lieu of outright dismissal, this court barred Claimant from arguing the "innocent owner" defense under 18 U.S.C. § 983. (See Order (Doc. 35) at 9.)

### III. **SUMMARY JUDGMENT STANDARD**

A motion for summary judgment is appropriately granted when an examination of the pleadings, affidavits, and other proper

discovery materials before the court demonstrates no genuine dispute exists as to any material fact. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" affirmatively citing to particular parts of the record or "showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. Id. at 255. However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Id. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. This same standard applies in civil forfeiture actions; summary judgment is appropriate when there is no genuine dispute as to any material fact. United States v. $94,200.00 in U.S. Currency, Civil No. 1:11CV00609, 2012 WL 2885129, at *4 (M.D.N.C. July 13, 2012).

**IV. ANALYSIS**

Plaintiff contends the property at issue is subject to forfeiture under either 21 U.S.C. § 881(a)(6), "as money furnished or intended to be furnished in exchange for a controlled substance . . . or as proceeds traceable to such an exchange," or 18 U.S.C. § 981(a)(1)(C), "as money constituting or derived from proceeds traceable to specified unlawful activity, specifically the exchange of a controlled substance . . . ." (See Pl.'s Mem. in Supp. of Mot. for Summ. J. (Doc. 38) at 1.)

"The subject matter jurisdiction for forfeiture is conferred by 28 U.S.C. § 1355(a); the authority to forfeit is provided by 21 U.S.C. § 881(a)(6); and the rules of procedure for pursuing a civil forfeiture are provided by 18 U.S.C. § 983." United States v. Wilson, 699 F.3d 789, 795 (4th Cir. 2012), cert. denied, ____ U.S. ____, 133 S. Ct. 2401 (2013). Pursuant to § 881(a)(6), "all proceeds traceable" to an "exchange for a controlled substance or listed chemical in violation of this subchapter . . . " are subject to forfeiture. 21 U.S.C. § 881(a)(6).

Under 18 U.S.C. § 983(c), the government bears the initial burden of proof, by a preponderance of the evidence, that the

property in question is subject to forfeiture. 18 U.S.C. § 983(c)(1); see United States v. Munson, 477 F. App'x 57, 65 (4th Cir.), cert. denied, ____ U.S. ____, 133 S. Ct. 315 (2012). If the government makes an initial showing that the property is properly subject to forfeiture, the burden then shifts to the claimant to prove the affirmative defense of innocent ownership by a preponderance of the evidence. 18 U.S.C. § 983(d); Munson, 477 F. App'x at 65.

As discussed above, as a sanction for Claimant's failure to obey a discovery order, Claimant is barred from asserting the "innocent owner" defense. Therefore, for purposes of the present motion, Plaintiff must only show that the cash at issue is proceeds traceable to illegal drug transactions.

"The government may rely on circumstantial evidence to establish forfeitability." United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010). Moreover, "[p]roceeds need not be tied to any particular identifiable drug transaction." United States v. 998 Cotton St., Forsyth Cnty., N.C., No. 1:11-CV-356, 2013 WL 1192821, at *13 (M.D.N.C. Mar. 22, 2013). "Insufficient legitimate income to explain expenditures, along with evidence of drug trafficking, is evidence of property derived illegally." Id. "The mere allegation of a highly unlikely legitimate source

of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." $94,200.00 in U.S. Currency, 2012 WL 2885129, at *6 (quotations omitted).

The uncontested facts show this property is subject to forfeiture. In her brief opposing Plaintiff's summary judgment motion, Claimant does not cite the record or present a single piece of affirmative evidence disputing Plaintiff's factual assertions. Rather, Claimant argues that the Government failed to carry its burden based on the evidence presented. This court disagrees.

First, it is undisputed that Claimant's son was a drug dealer. (See Pl.'s Mem. in Supp. of Mot. for Summ. J. (Doc. 38) at 11; Claimant's Resp. in Opp'n to Pl.'s Mot. for Summ. J. ("Claimant's Resp.") (Doc. 44) at 4; see also Ex. H, Declaration of Carmen Combs ("Combs Decl.") (Doc. 38-9) ¶ 5.) Second, the Government has presented both circumstantial and direct evidence that Lee Dial was dealing drugs out of Claimant's residence prior to the seizure of the Defendant Properties. (See Ex. A, Pierce Decl. (Doc. 38-2) ¶¶ 3, 7). After the seizure, a police canine performing a "narcotics sniff" alerted to the two boxes containing the Defendant Properties. (Ex. D, Patterson Decl.

(Doc. 38-5) ¶ 6.) Moreover, during a recorded police interview on December 30, 2013, Lee Dial stated, "Yeah, I've sold drugs. I've sold a lot of drugs. I've made a lot of money." (Ex. H, Combs Decl. (Doc. 38-9) ¶¶ 4- 5.) He also indicated that he used to make $4,000 to $5,000 per week. (Id. ¶ 7.)

Without any documentation in support, Claimant contends that the "fact that [Lee Dial] sold an amount of drugs to save the amount of money found . . . is in question." (Claimant's Resp. (Doc. 44) at 4; see id. at 5 ("[Lee Dial] was not making the type of money to have the proceeds that were seized.").) However, without more, this assertion amounts to pure speculation and, as such, is insufficient to create a genuine issue. See, e.g., Fed. R. Civ. P. 56(c); Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

Other uncontested facts in the record reinforce Plaintiff's contention that the Defendant Properties are proceeds of Lee Dial's illegal drug transactions. For instance, after the $2,990.00 in cash was found in the vehicle, Lee Dial stated "what they excited because they found that little of money," and "it was nothing but three thousand dollars." (Ex. C, Declaration of Gerald Serrano (Doc. 38-4) ¶ 7.) At a minimum, such statements demonstrate that Lee Dial knew that the money was in

the car and the approximate value of the cash. Further, a photograph downloaded from one of Lee Dial's seized phones shows him holding three large bundles of cash, two of which were secured by rubber bands in a similar fashion to the money seized from the vehicle and a portion of the money seized from the home. (See Doc. 38-7.)

Finally, the uncontested facts show that during the search of her residence, Claimant was unable to name the location or the amount of the money in her home. Claimant also made several inaccurate attempts to cite the location of the money. Furthermore, Claimant has failed to produce any supporting documentation for her claim that the money was saved from her work as a Certified Nurse Assistant or from Social Security payments. Such bare assertions are insufficient to create genuine issues of fact. See $94,200.00 in U.S. Currency, 2012 WL 2885129, at *6 ("[Claimant's] statement that she received the money from selling her restaurant, without supporting evidence, does not create a genuine issue of material fact."); United States v. 2005 Porsche Cayenne, No. 1:12-CV-423, 2013 WL 5755044, at *3 (M.D.N.C. Oct. 23, 2013) ("[Claimant's] statement that the money for the Porsche came from her savings, without supporting evidence or identification of the source of these

alleged savings, does not create a genuine issue of material fact . . . .").

Several cases have held that similar combinations of factors are sufficient to establish forfeitability at the summary judgment stage. See United States v. Currency, U.S., $147,900.00, 450 F. App'x 261, 264 (4th Cir. 2011) (finding claimant's "history of involvement with illegal drugs," possession of a large quantity of cash occurring simultaneously with his drug-sale activity, and lack of legitimate source of income, taken together, constituted "sufficient, albeit not overwhelming, evidence that some of the currency seized from [claimant's] property is connected to his drug activities"); $94,200.00 in U.S. Currency, 2012 WL 2885129, at *6 (finding summary judgment appropriate where a police canine alerted to cash, claimant gave conflicting answers to questions about the money, claimant resided in a drug-involved premise, and claimant failed to present evidence of sufficient legitimate income); United States v. $864,400.00 in U.S. Currency, No. 1:05CV919, 2009 WL 2171249, at *3 (M.D.N.C. July 20, 2009) (finding summary judgment appropriate where police canine alerted to cash, claimant gave implausible explanation for source of cash, cash was stored in a "cavity" of the car, and cash was bundled

together with rubber bands); United States v. $2,599.00 in U.S. Currency, No. 7:11-CV-192-BR, 2013 WL 1786493, at *8-9 (E.D.N.C. Apr. 25, 2013)(finding summary judgment appropriate where dog alerted to cash, cash was found in a drug-involved premise, the large quantity of cash was packed in vacuum-sealed bags, and claimant gave no legitimate source of income).

Here, the uncontested facts show a police canine alerted to the boxes containing the seized currency, Claimant's home was used to conduct drug sales prior to the seizure, Claimant was unable to identify the location or amount of the cash within her home, Lee Dial photographed himself holding bundles of cash secured together in a similar fashion as much of the seized currency, marijuana seeds were located in Claimant's home, marijuana plants were located in Claimant's yard, and Claimant has not presented evidence of a legitimate source of income, though given extended opportunities to do so.

Therefore, the Government has presented sufficient, uncontroverted evidence demonstrating that the Defendant Properties were the proceeds of illegal drug transactions. Claimant has presented no affirmative evidence disputing the Government's contentions. Because Claimant has failed to create

a genuine dispute as to any material fact, the Government is entitled to summary judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 37) is hereby **GRANTED**.

This the 14th day of November, 2014.

_____
United States District Judge